Dragons 516 Ltd. v GDC 138 E 50 LLC (2024 NY Slip Op 50918(U))

[*1]

Dragons 516 Ltd. v GDC 138 E 50 LLC

2024 NY Slip Op 50918(U)

Decided on July 16, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 16, 2024
Supreme Court, New York County

Dragons 516 Limited, Plaintiff,

against
GDC 138 E 50 LLC and SHANGHAI MUNICIPAL INVESTMENT (GROUP) USA LLC, Defendants.

Index No. 651690/2019

Attorneys for Plaintiff:
Daniel S. Shamah, Esq. of O'MELVENY & MYERS LLP
William H. Taft, Esq. of DEBEVOISE & PLIMPTON LLP
Kristin D. Kiehn, Esq. of DEBEVOISE & PLIMPTON LLP
Attorneys for the Defendants:
John Lonuzzi, Esq. of LONUZZI & WOODLAND, LLP

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 008) 226, 227, 228, 229, 233, 234, 235, 236, 242, 252, 255 were read on this motion to QUASH SUBPOENA, FIX CONDITIONS .
The following e-filed documents, listed by NYSCEF document number (Motion 009) 230, 231, 232, 256, 257, 258, 259, 260 were read on this motion to QUASH SUBPOENA, FIX CONDITIONS.
Motion sequence numbers 008 and 009 are consolidated herein for disposition.
This action arises from plaintiff's $30 million loan to defendant GDC 138 E 50 LLC (GDC) for investment into a condominium development project in Midtown Manhattan. On January 27, 2020, the court, by Sherwood, J., rendered summary judgment for plaintiff against GDC in the amount of $41,138,614.84. Plaintiff has yet to recover the judgment.
In motion sequence number 008, defendant Shanghai Municipal Investment (Group) USA LLC (SMI-USA) and non-parties ST 91 Leonard Street LLC (ST 91) and SMI Central Park Tower LLC (SMI-Central) move, pursuant to CPLR 5240, 3103, for a protective order and, pursuant to CPLR 2304, for an order quashing certain unspecified subpoenas served by plaintiff on various, unspecified banks with regard to various entities with whom SMI-USA, ST 91, and SMI-Central transact or have transacted business.
In motion sequence number 009, SMI-USA and non-party SMI 138 E 50 St LLC (SMI-138) move, pursuant to CPLR 5240 and 3103, for a protective order and, pursuant to CPLR [*2]2304, for an order quashing plaintiff's subpoena on Citibank, N.A. (Citibank) with regard to SMI-138's bank account at Citibank.
Plaintiff opposes both motions. For the reasons set forth herein, both motions are denied in their entirety.
I. BACKGROUND
On June 1, 2017, plaintiff Dragons 516 Limited (Dragons), as lender, entered into a certain Facility Agreement with defendant GDC, as borrower, defendant SMI-USA, as signatory, and non-party Genesis Development Company LLC (Genesis)—the owner of GDC—as "Borrower Parent" (see NYSCEF Doc. No. 005 [Facility Agreement]). Pursuant to the Facility Agreement, plaintiff agreed to lend GDC an aggregate amount of $30,000,000 for the stated purpose of financing GDC's investment into non-party entity 50 Lex Development LLC (50 Lex) and its condominium development project in Midtown Manhattan (the Project) (see Facility Agreement §§ 1.1, 3.1). The Facility Agreement sets out that defendant SMI-USA executed a "Letter of Undertaking" in favor of borrower in relation to the construction and development costs of the Project dated December 6, 2016. The Facility Agreement required the full payment of the principal plus interest and other costs and expenses by June 15, 2019.
On June 15, 2017, pursuant to an Amended Utilisation Request (NYSCEF Doc. No. 87), the full amount of $30 million was transferred to 50 Lex in its bank account with TD Bank, N.A. (TD Bank). Undisputedly, these amounts were transferred on the same day, within hours, to bank accounts belonging to SMI-USA and non-party Knights Genesis Investment (KGIL), then transferred again to various other entities, including SMI-USA, ST 91, and SMI-Central.
On August 19, 2019, two months after the due date for full payment of the loan, plaintiff sent GDC a letter demanding payment. Plaintiff received no response.
On March 21, 2019, plaintiff commenced this action against defendants GDC and SMI-USA by motion for summary judgment in lieu of complaint, alleging that GDC failed to repay the loan. Plaintiff further alleged that SMI-USA was the guarantor of the loan pursuant to a Guaranty Agreement dated March 6, 2018. After the court denied the motion, finding that the instrument was not for the payment of "money only" (see CPLR 3213), plaintiff filed a complaint (NYSCEF Doc. No. 60), asserting three breach of contract claims as against GDC and SMI-USA.
Plaintiff later moved for summary judgment against GDC only (mot seq No. 004). When GDC withdrew its opposition to the motion, the court granted summary judgment for plaintiff against GDC on January 27, 2020, and plaintiff was issued a judgment against GDC of $41,138,614.84. Plaintiff has yet to recover from GDC.
Then, on May 26, 2020, plaintiff sought to amend the complaint to add additional defendants and causes of action, specifically for aiding and abetting fraud, conspiracy to commit fraud, unjust enrichment, money had and received, conversion, and aiding and abetting conversion. The court denied the motion, finding that the proposed additional causes of action were duplicative of the breach of contract claims or invalid without an underlying fraud claim (see NYSCEF Doc. No. 159).
On May 14, 2021, plaintiff commenced a second action against GDC, SMI-USA, and eleven other defendants, including 50 Lex and SMI-138 (see Dragons 516 Limited v Knights Genesis Investment Limited et al., Sup Ct, NY County, index No. 653187/2021). This time, plaintiff asserted no breach of contract claims and instead asserted claims for fraud and [*3]conspiracy to defraud, conversion, and aiding and abetting conversion.
On August 12, 2022, plaintiff served two subpoenas duces tecum on TD Bank (the subject of mot seq No. 008), the first of which demanded the production of "any and all" records relating to bank accounts at the bank belonging to KGIL, Genesis, KG Streetech or ST 91 (see mot seq No. 008, Lonuzzi affirmation, exhibit A), and the second of which demanded information for accounts belonging to SMI-138, SMI-USA, ST 91, or SMI-Central, as well as Kamonaire LLC, Genesis CPT LLC Operating, Shanghai Chengtou (see id., exhibit B).
On August 23, 2022, plaintiff served a subpoena on Citibank, N.A. (Citibank) (the subject of mot seq No. 009), demanding information for an account at Citibank belonging to SMI-138 (see mot seq No. 009, Lonuzzi affirmation, exhibit A).
The second action was consolidated with the first action under this index number on January 6, 2023 (see NYSCEF Index no. 653187/2021, Doc. No. 220).
II. DISCUSSION
CPLR 3101 requires full disclosure of all matter material and necessary in the prosecution or defense of an action. Thus, "an application to quash a subpoena should be granted only where the futility of the process to uncover anything legitimate is inevitable or obvious . . . or where the information sought it utterly irrelevant to any proper inquiry" (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327 [1988]). The person seeking to quash the subpoena bears the burden of establishing that the requested documents and records are irrelevant (see Ledonne v Orsid Realty Corp., 83 AD3d 598 [1st Dept 2011]).
Post-judgment, CPLR 5223 permits a judgment creditor to "compel disclosure of all matter relevant to the satisfaction of a judgment." It is a "generous standard that allows for a broad range of inquiry through either the judgment debtor or any third person with knowledge of the debtor's property" (ICD Grp., Inc. v Israel Foreign Trade Co. (USA) Inc., 224 AD2d 293, 294 [1st Dept 1996], citing generally Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5223:2 at 214). New York law expressly permits the use of judgment enforcement subpoenas to "determine whether the judgment debtor[] . . . transferred any assets so as to defraud the judgment creditor" (Berisha v Tosca Cafe, Inc., 202 AD3d 531, 532 [1st Dept 2022]).
CPLR 3103 (a) "permits a court to issue a protective order denying, limiting, conditioning or regulating the use of any disclosure device where necessary to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts" (Liberty Petroleum Realty, LLC v Gulf Oil, L.P., 164 AD3d 401, 403 [1st Dept 2018]). "An individual or entity who seeks a protective order bears the initial burden to show either that the discovery sought is irrelevant or that it is obvious the process will not lead to legitimate discovery" (id.). Once this burden is met, the opposing party must "establish that the discovery sought is 'material and necessary' to the prosecution or defense of an action, i.e., that it is relevant" (id.).
1. Subpoena on TD Bank (mot seq No. 008)
In motion sequence number 008, the movants, defendant SMI-USA and non-parties ST 91 and SMI-Central, seek to quash certain unspecified subpoenas issued by plaintiff upon various unspecified banks, including TD Bank. Movants admit "it is not known how many such subpoenas have been issued" and seek relief as to "numerous subpoenas" (Lonuzzi affirmation ¶ 2). They then attach copies of the two subpoenas served on TD Bank on August 12, 2022 as [*4]examples of the subpoenas they contemplate.
Consistent with the well-established principle that a would-be litigant must demonstrate an "injury in fact," the court cannot rule on matters not properly before it (see Socy. of Plastics Indus. v County of Suffolk, 77 NY2d 761, 772 [1991]). Therefore, the court will address only those subpoenas specifically described and submitted as exhibits A and B with Counselor Lonuzzi's affirmation in support of motion sequence number 008—those served on TD Bank on August 12, 2022.
As an initial matter, the movants in this motion lack standing to challenge the subpoenas as to most of the bank accounts referenced therein. "A person other than one to whom a subpoena is directed has standing to move to quash the subpoena where he or she has a proprietary interest in the subject documents or where they involve privileged communications" (Hyatt v State of California Franchise Tax Bd., 105 AD3d 186, 194-195 [2d Dept 2013]). Except as to those accounts owned by the movants themselves, movants have not demonstrated any proprietary interest in the accounts invoked in subpoenas A and B (see id.). These are owned by other entities, including SMI-138, Genesis, KG Streetech LLC, Kamonaire LLC, Genesis CPT LLC Operating, and Shanghai Chengtou USA, to whom movants have not shown any connection. Accordingly, the motion is denied as to information sought from the accounts belonging to these other entities.
With respect to the accounts at TD Bank owned by the movants themselves, movants argue that the subpoenas should be quashed because they seek information irrelevant to the enforcement of plaintiff's judgment against GDC (see Liberty Petroleum Realty, LLC).
Movants primarily argue that, while they admit that the loan proceeds were deposited into 50 Lex's TD Bank account and then transferred out to movants' accounts, GDC no longer had interest in the funds after they left the 50 Lex account. Movants emphasize that none of the movants have any affiliation with the 50 Lex project or the loan facility and that they are not judgment debtors in this action.
In opposition, plaintiff argues that financial information regarding movants is "potentially relevant to the location of assets available to satisfy [plaintiff]'s judgment against GDC" (see mem for plaintiff in opp to mot seq No. 008 at 7). Plaintiff insists that, because the $30 million borrowed by GDC and placed by Dragons into the 50 Lex account "were not used to purchase interests in [50 Lex] as required under the Facility Agreement . . . [t]hose funds . . . continue to belong to [GDC] and are available to satisfy [plaintiff's] judgment" (id. at 8).
In reply, movants maintain that the loan proceeds were in fact used to invest into 50 Lex and thus, once transferred, no longer belonged to GDC; and, therefore, these funds are not available to plaintiff for the purposes of recovery.
As the court previously found in motion sequence number 006, "there are clear questions of fact as to whether the transfer of funds from the 50 Lex account was done with an intent to defraud" (mot seq No. 006, decision at 3). Therefore, the subpoenas in question are permissible as a way to "determine whether the judgment debtor[] . . . transferred any assets so as to defraud the judgment creditor" (Berisha v Tosca Cafe, Inc.). Accordingly, movants' request to quash the subpoenas is denied.
For the same reason, movants fail to demonstrate that the subpoena is "irrelevant or that it is obvious the process will not lead to legitimate discovery" (Liberty Petroleum), and their request for a protective order is also denied.
2. Subpoena on Citibank (mot seq No. 009)
In motion sequence number 009, the movants, defendant SMI-USA and non-party SMI-138, seek to quash the subpoena plaintiff served upon Citibank with respect to the bank account held by SMI-138 at Citibank. Movants also seek a protective order as to that bank account.
Movants' arguments in motion sequence number 009 are identical to those put forward in motion sequence number 008. For the same reasons, this motion is denied in its entirety.
Accordingly, it is
ORDERED that the motion of SMI-USA, ST 91 and SMI-Central (seq No. 008) is denied in its entirety; and it is further
ORDERED that SMI-USA, ST 91 and SMI-Central shall respond and comply with the terms of the two subpoenas served on TD Bank on August 12, 2022 within 30 days of receipt of notice of entry of this order; and it is further
ORDERED that the motion of SMI-USA and SMI-138 (seq No. 009) is denied in its entirety; and it is further
ORDERED that SMI-USA and SMI-138 shall respond and comply with the terms of the subpoena served on Citibank on August 23, 2022 within 30 days of receipt of notice of entry of this order.
DATE July 16, 2024
ROBERT R. REED, J.S.C.